**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CRÉDIT AGRICOLE CORPORATE AND
INVESTMENT BANK, *et al.*,

               Petitioners,

     v.

BLACK DIAMOND CAPITAL MANAGEMENT,
LLC, *et al.*,

              Respondents-Cross-Petitioners.

18 Civ. 7620 (GHW)

---

**MEMORANDUM OF LAW (1) IN OPPOSITION TO PETITIONERS'
MOTION TO VACATE OR MODIFY AMENDED ARBITRATION AWARD
AND TO CONFIRM ORIGINAL AWARD, AND (2) IN SUPPORT OF RESPONDENTS'
CROSS-PETITION TO CONFIRM AMENDED FINAL ARBITRATION AWARD**

**RICHARDS KIBBE & ORBE LLP**
David W.T. Daniels
Portrait Building, 701 8th Street, N.W.
Washington, DC  20001-3727
Phone: (202) 261-2960
Fax: (202) 261-2999

*Counsel for Respondent Black Diamond
Commercial Finance, L.L.C.*

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Jeffrey H. Zaiger
Gila S. Singer
485 Lexington Ave, 30th Floor
New York, NY 10017
(212) 407-1200

*Counsel for Respondents Black Diamond
Capital Management, LLC, BDC Finance
L.L.C., and Black Diamond CLO 2006-1
(Cayman), Ltd.*

**T**ABLE OF **C**ONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................1

FACTUAL BACKGROUND ...............................................................2

    A.    The Parties' Arbitration Agreement and Governing Rules..................2

    B.    The Arbitration and Initial Award .......................................3

    C.    Respondents' Rule 50 Motion ..........................................4

    D.    The May 21 Order and Final Award...................................4

ARGUMENT .....................................................................................5

  I.    THERE IS NO BASIS FOR VACATUR ...................................5

    A.    The Panel Did Not Exceed Its Authority ............................6

      1.    The Panel Did Not Exceed Its Authority in Interpreting Rule 50..............7

      2.    The Panel's Interpretation of Rule 50 Was Correct...................8

    B.    There Was No "Manifest Disregard of the Law" .................9

  II.    THERE IS NO BASIS TO MODIFY THE AMENDED FINAL AWARD ..............10

  III.    THE AMENDED FINAL AWARD SHOULD BE CONFIRMED..........................11

CONCLUSION.....................................................................................11

<u>T</u><small>ABLE OF</small> <u>A</u><small>UTHORITIES</small>

**Page(s)**

**Cases**

*Anthony v. Affiliated Computer Servs., Inc.*,
   621 F. App'x 49 (2d Cir. 2015) ........................................................................7

*Barry v. Atkinson*,
   No. 96 Civ. 8436 PKL, 1999 WL 997151 (S.D.N.Y. Nov. 3, 1999)...........................5, 10

*Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*,
   No. 96 CIV. 6441(PKL), 2000 WL 60200 (S.D.N.Y. Jan. 25, 2000) ..............................10

*Curtis Lumber Co. v. Am. Energy Care, Inc.*,
   No. 131-10, 2010 WL 1756883 (Sup. Ct. Albany Cnty. Apr. 30, 2010),
   *aff'd as modified*, 81 A.D.3d 1225 (3d Dep't 2011)...........................................5

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)...........................................................................11

*Duferco Int'l Steel Trading v. T. Kaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003)....................................................................5, 6, 11

*E. Associated Coal Corp. v. United Mine Workers*,
   531 U.S. 57 (2000)...................................................................................7

*Florasynth, Inc. v. Pickholz*,
   750 F.2d 171 (2d Cir. 1984).........................................................................11

*Jock v. Sterling Jewelers Inc.*,
   646 F.3d 113 (2d Cir. 2011).........................................................................6

*Oxford Health Plans LLC v. Sutter*,
   569 U.S. 564 (2013)............................................................................. 11-12

*Pfeffer v. Wells Fargo Advisors, LLC*,
   723 F. App'x 45 (2d Cir. 2018) .....................................................................11

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
   564 F.3d 81 (2d Cir. 2009)...........................................................................7

*ST Microelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
   648 F.3d 68 (2d Cir. 2011)........................................................................6 n.2

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..................................................................................................6

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)............................................................... *passim*

*United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*,
    804 F.3d 270 (2d Cir. 2015)...................................................................................6

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004)...................................................................................9

## Rules & Statutes

American Arbitration Association, Commercial Arbitration Rules
    and Mediation Procedures, Rule 1(a)..................................................................2

American Arbitration Association, Commercial Arbitration Rules
    and Mediation Procedures, Rule 7....................................................................1, 3

American Arbitration Association, Commercial Arbitration Rules
    and Mediation Procedures, Rule 8 ...........................................................1, 3, 4, 8

American Arbitration Association, Commercial Arbitration Rules
    and Mediation Procedures, Rule 50 ...................................................... *passim*

9 U.S.C. § 9 ....................................................................................................................11

9 U.S.C. § 10(a)(4).................................................................................................1, 6, 8

9 U.S.C. § 11(a) .............................................................................................................10

# PRELIMINARY STATEMENT[1]

Petitioners' motion to vacate an Amended Final Arbitration Award ("**Amended Final Award**") and to confirm an earlier issued Arbitration Award (the "**Initial Award**") or, alternatively, to modify the Amended Final Award is frivolous.

Petitioners agreed to arbitrate under the Commercial Rules of the American Arbitration Association (the "**Commercial Rules**" or "**Rules**" (West Ex. I)).  Those Rules explicitly conferred on the arbitration Panel authority to:  (1) correct any computational error in its Initial Award (Rule 50); (2) "rule on [its] own jurisdiction" (Rule 7); and (3) "interpret and apply [the Commercial] rules insofar as they relate to the [Panel's] powers and duties" (Rule 8).  The Panel did nothing more than exercise the authority that the parties gave it.

In seeking vacatur, Petitioners fail to bring to the Court's attention controlling Second Circuit law foreclosing their arguments:

- ***Functus Officio* Doctrine Inapplicable.**  Petitioners invoke the *functus officio* doctrine but "ignore an important caveat to [that] doctrine:  <u>that it only applies absent an agreement by the parties to the contrary</u>."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010).  Petitioners agreed to allow the Panel to correct computational errors, and to determine the scope of its authority to do so, by incorporating the Commercial Rules.  Consequently, the *functus officio* doctrine does not apply.

- **No Grounds for Vacatur under the Federal Arbitration Act.**  Vacatur is unavailable under § 10(a)(4) of the Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 10(a)(4), for the same

---

[1]    Emphasis is added to, and internal citations, brackets, and quotes are omitted from, quotations throughout this brief.  Petitioners' Memorandum of Law is abbreviated "**Pet. Mem.**"  To avoid duplication, Respondents incorporate and refer to exhibits submitted by Petitioners in the Declaration of Colin T. West (ECF No. 8), which are denominated "**West Ex. __**."

reason.  It is settled Second Circuit law that, when parties vest authority in the arbitrators to correct an award and to determine the scope of their own power to do so, the arbitrators do not exceed their authority — and "the Amended Award cannot be vacated" under FAA § 10 — on that ground.  *T.Co*, 592 F.3d at 346.

- **No Manifest Disregard.**  Petitioners' claim that the Panel manifestly disregarded the law is meritless.  Manifest disregard supports vacatur only in "exceedingly rare instances where some egregious impropriety on the part of the arbitrator[s] is apparent."  *Id.* at 339. Petitioners disagree with the Panel because it rejected their arguments.  That is not a basis for vacatur.

The Panel was well within its authority to correct its miscalculation and amend the Initial Award.  Respondents therefore petition the Court to confirm the Amended Final Award and deny Petitioners' motion to vacate or modify it.

## FACTUAL BACKGROUND

### A.    The Parties' Arbitration Agreement and Governing Rules

On October 10, 2017, the parties entered a binding agreement to arbitrate claims pending in a New York state court lawsuit captioned *Credit Agricole Corporate and Investment Bank, et al. v. BDC Finance, L.L.C., et al.*, Index No. 651989/2010 (Sup. Ct. N.Y.Cnty.).  (*See* West Ex. F (the "**Arbitration Agreement**")).  The Arbitration Agreement provided that the arbitration was subject to the FAA and governed by the Commercial Rules.  (*Id.* ¶ 2).

The Commercial Rules provide, in relevant part:

- **Rule 1(a).**  "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its [Commercial Rules]."  (West Ex. I at 10).

- **Rule 7.** "The arbitrator shall have the power to rule on his or her own jurisdiction . . . ." (*Id.* at 13).

- **Rule 8.** "The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." (*Id.* at 14).

- **Rule 50.** "Within 20 calendar days after the transmittal of an award, any party . . . may request the arbitrator . . . to correct any clerical, typographical, or computational errors in the award." (*Id.* at 50).

### B.    The Arbitration and Initial Award

The arbitration commenced in January 2018 and proceeded before a distinguished Panel composed of Chair Hon. Shira Scheindlin (Ret.), Jonathan Lerner, Esq., and Richard Davis, Esq. On April 20, 2018, the Panel issued a 178-page Initial Award (West Ex. A), in which the Panel rejected all of Petitioners' claims against Black Diamond Commercial Finance, LLC (the "Agent" under the underlying contracts) and all breach of contract claims against Black Diamond Capital Management, LLC, BDC Finance LLC, and Black Diamond CLO 2006-1 (collectively, the "**Black Diamond Lenders**").  The Panel awarded Petitioners $25,964,570 in damages against Black Diamond Lenders on an implied-covenant theory.  (*See* West Ex. A at 86-87, 121-22, 144, 173-74).

As the Panel stated in the Initial Award, "from this figure" it intended to "then subtract[] the cash payments received" by Petitioners over time "and calculate [pre-judgment interest]," but the Panel erred in its computation.  Rather than subtracting intervening payments from principal and then "calculat[ing] PJI accordingly" — as it set out to do — the Panel mistakenly subtracted the intervening payments from the wrong number — the sum of both principal and interest.  (*Id.* at 174-75).  This resulted in a miscalculation of interest, erroneously awarding compound

3

interest to Petitioners.  Petitioners did not request compound interest, and any award of it would have violated the parties' Arbitration Agreement, which incorporates New York's simple interest statute expressly.  (*See* West Ex. F ¶ 2 ("the statutory provisions of the New York CPLR relating to pre-judgment interest . . . shall apply to any award in the Arbitration")).

### C.    Respondents' Rule 50 Motion

On April 23, 2018, Respondents submitted a motion under Rule 50 of the Commercial Rules "to correct a computational error in the Panel's [Initial] Award that resulted in [Petitioners] being improperly awarded compounded pre-judgment interest."  (West Ex. H at 1-2 (the "**Rule 50 Motion**")).  Respondents' motion pointed out that the Panel erroneously "computed interest based on previously-accrued interest beginning in March 2016," and included a calculation that corrected the mathematical error, using the same computational basis that both sides' experts used during the Arbitration.  (*Id.* at 2).  Petitioners opposed the Rule 50 Motion on May 2, 2018, and Respondents replied on May 8, 2018.  (*See* West Exs. K & L).

### D.    The May 21 Order and Final Award

On May 21, 2018, the Panel granted Respondents' Rule 50 Motion, entered an Order Modifying Award (the "**May 21 Order**" (West Ex. J)), and issued the Amended Final Award to correct its miscalculation of PJI.  (West Ex. B).

In its May 21 Order, the Panel held that under Rule 8 of the Commercial Rules it "has the authority to 'interpret and apply' the AAA Rules."  (West Ex. J at 2).  In a 6-page decision painstakingly analyzing the parties' arguments, the Panel unanimously concluded "that it made a computational error when calculating interest and that correcting that error does *not* involve redetermining the merits of any claim already decided."  (*Id.* at 2).

In so holding, the Panel found Petitioners' principal authority — the state trial court

4

decision in *Curtis Lumber Co. v. Am. Energy Care, Inc.*, No. 131-10, 2010 WL 1756883 (Sup. Ct. Albany Cnty. Apr. 30, 2010), *aff'd as modified*, 81 A.D.3d 1225 (3d Dep't 2011) — "easily distinguishable from the dispute now before this Panel" because "*Curtis* involved the arbitrator's application of a new rule of substantive law . . . not, as here, the failure accurately to calculate PJI in accordance with the Panel's understanding and intent as to the agreed method for doing so." (West Ex. J at 3). Addressing its miscalculation, the Panel observed: "There was never any question as to the calculation of PJI — it was always meant to be simple rather than compound interest. We inadvertently made a computational error by compounding interest on the remaining balance after partial payment." (*Id.*).

The Panel also rejected Petitioners' argument that the recalculation overstates the error because the pre-payments should have been applied to interest before principal under New York law. It held that, even "if this position were meritorious — which we do not believe it is — it would constitute a mistake of law . . . and we have no jurisdiction to correct a mistake of law." Nonetheless, "as a substantive matter" the Panel stated that it "disagree[d] that [Petitioners' method] would be an appropriate way to calculate PJI." (*Id.* at 4 (citing *Barry v. Atkinson*, No. 96 Civ. 8436 PKL, 1999 WL 997151, at *2 (S.D.N.Y. Nov. 3, 1999)).

The Panel also rejected Petitioners' request to correct other alleged errors in its damages calculation beyond its error in computing PJI. (*Id.* at 5 ("Our determination to correct an inadvertent computational error did not 'reopen' our damage 'methodology.'")).

## ARGUMENT

### I.   THERE IS NO BASIS FOR VACATUR

"It is well established that courts must grant an arbitration panel's decision great deference." *See*, *e.g.*, *Duferco Int'l Steel Trading v. T. Kaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). "A court's review of an arbitration award is . . . severely limited so as not to

frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015). Accordingly, "[a] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco*, 333 F.3d at 388.[2]

Section 10 of the FAA defines the limited sets of circumstances in which a federal court may vacate an arbitral award. In addition to the statutory provisions, Courts in this Circuit have held that, in extremely narrow circumstances, an award "may be vacated when an arbitrator has exhibited a manifest disregard of the law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). Here, Petitioners contend that the Panel "exceeded its powers pursuant to Section 10(a)[(4)] of the FAA and, in so doing, exhibited a manifest disregard for the law." (Pet. Mem. at 12). Petitioners, however, do not come close to meeting the high hurdle justifying vacatur.

### A.    The Panel Did Not Exceed Its Authority

Section 10(a)(4) of the FAA permits vacatur only "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Applying that standard, the Supreme Court has held that "[i]t is not enough for petitioners to show that the panel committed an error — or even a serious error. It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). The Second Circuit has "consistently accorded the narrowest of readings to this

---

[2]    *See also*, *e.g.*, *ST Microelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) ("a party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.").

provision of law." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009); *see also Anthony v. Affiliated Computer Servs., Inc.*, 621 Fed. App'x 49, 50-51 (2d Cir. 2015) (same).  An award will not be vacated as long as the panel "is even arguably construing or applying the contract and acting within the scope of [its] authority."  *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000).

### 1.    The Panel Did Not Exceed Its Authority in Interpreting Rule 50

Petitioners contend that the Panel was *functus officio* after issuing the Initial Award and, as such, exceeded its authority by granting Respondents' Rule 50 Motion and issuing the Amended Final Award.  (Pet. Mem. at 10-11).  This argument is meritless under controlling Second Circuit precedent.

In *T.Co*, the Second Circuit held that the *functus officio* doctrine — limiting arbitrators' ability to act once they have completed their duties — "only applies absent an agreement by the parties to the contrary."  592 F.3d at 342.  The issue presented in *T.Co* was whether the arbitrator exceeded his authority by amending an arbitration award based on his interpretation of the governing International Dispute Resolution Procedures of the American Arbitration Association International Centre of Dispute Resolution ("**ICDR**").  Like Commercial Rule 50, ICDR Article 30(1) authorizes an arbitrator to "correct any clerical, typographical or computational errors."  *Id.* at 336.  In *T.Co*, petitioners argued that the arbitrator's corrections were not clerical errors within the meaning of ICDR Article 30(1) and, therefore, exceeded his authority.

The Second Circuit squarely rejected this argument, holding that a court cannot substitute its own interpretation of the governing rules for the arbitrator's.  The *T.Co* Court held that a § 10.14(a)(4) inquiry "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not* whether the arbitrators

correctly decided the issue." *Id.* at 346.  It ruled that "once [a court] determine[s] that the parties intended for the arbitration panel to decide a given issue, it follows that the arbitration panel did not exceed its authority in deciding that issue — irrespective of whether it decided the issue correctly." *Id.*  Thus, "even assuming [the Court] viewed the arbitrator's construction of Article 30(1) to be erroneous . . . the Amended Award cannot be vacated under § 10(a)(4) merely on that ground." *Id.*

Here, as in *T.Co*, the parties "provide[d] a clear and unmistakable expression" of their "intent to allocate to the arbitrator the task of interpreting the scope of [the arbitrator's] powers." *Id.* at 344.  The parties expressly agreed that the Commercial Rules governed and were incorporated in their Arbitration Agreement.  (*See* West Ex. F ¶ 2; *see also* West Ex. I at Rule 1).  The Commercial Rules grant the Panel the "power to rule on [its] own jurisdiction" and the power to "interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties."  (*Id.* at Rules 7 & 8).  The Panel explicitly relied on its Rule 8 authority in concluding that it inadvertently "made a computational error when calculating interest."  (West Ex. J at 2).  *T.Co* is controlling and dispositive of Petitioners' motion.

## 2.    <u>The Panel's Interpretation of Rule 50 Was Correct</u>

Even if this Court were free to reopen the Panel's interpretation of Rule 50 — which, under *T.Co*, it is not — the Panel's conclusion that it was authorized to correct its error in computing PJI was plainly correct.

In New York state court, PJI computations are ministerial and usually performed by the clerk using a formula published on the court's website: "<u>Principal</u> x Annual Rate x Number of Months divided by 12" or "<u>Principal</u> x Annual Rate x Number of Days divided by 365/366." (*See* http://www.nycourts.gov/courts/nyc/civil/judgments_atty.shtml#interest).  The multiplier in

the equation is <u>principal</u>, not principal + previously-accrued interest.  The use of any other multiplier is a computational error.

Moreover, as the Panel held in its May 21 Order, the Initial Award *itself* makes clear that this was a computational error:

> At page 174 of the Award we awarded damages of $25,964,570.3176.  We then stated:  "From this figure" we intend to "then subtract[] the cash payments received and calculate PJI accordingly."  But rather than simply subtracting the payments from the principal figure and then calculating PJI, we subtracted the payments from the sum of both principal and PJI that had already been calculated and then calculated interest on both principal and PJI.  That was a computational error.

(West Ex. J at 3-4).

## B.    There Was No "Manifest Disregard of the Law"

Resurrecting arguments and authorities rejected by the Panel — regarding whether pre-payments should be applied first to accrued interest or the principal damages amount — Petitioners maintain that "this Court can and should vacate the Amended [Final] Award" because "it exhibits a manifest disregard of the *substantive* law concerning the application of the pre-payments." (Pet. Mem. at 17).  The Panel did not disregard this argument.  It rejected the argument because it is devoid of merit.

The manifest disregard doctrine requires more than an arbitrator's "error or misunderstanding with respect to the law."  *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).  "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached."  *T.Co*, 592 F.3d at 339 (emphasis in original).  The manifest disregard doctrine is reserved only for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  *Id.*  Here, the Panel did not engage in any impropriety.  It cogently analyzed and rejected Petitioners' arguments. The Panel concluded that it did not have jurisdiction to correct certain supposed errors identified

by Petitioners, and further held in the alternative that even if it had jurisdiction, the arguments

were wrong:

> [Petitioners] argue that Respondents' recalculation "is erroneous and overstates the
> Panel's alleged error" . . . and any payments made should be subtracted first from
> PJI, rather than from the principal.  As a threshold matter, this legal argument was
> never raised before by [Petitioners] and it is too late to do so now.  There are two
> additional problems with this argument.  *First*, if this position were meritorious —
> which we do not believe it is — it would constitute a mistake of law . . . and we
> have no jurisdiction to correct a mistake of law . . . .  *Second*, as a substantive matter,
> we disagree that this would be an appropriate way to calculate PJI.  *See, e.g.*, *Barry
> v. Atkinson*, 1999 WL 997151, at *2 (S.D.N.Y. Nov. 3, 1999) . . . .  In short, we
> reject this argument."

(West Ex. J at 4).

The Panel's recalculation of PJI finds ample support in case law as well as the

opinions of both parties' valuation experts, both of whom calculated PJI in this manner.

This support was highlighted in Respondents' May 8 Reply (West Ex. L at 2-3) and

relied on by the Panel.  Clearly, the Panel did not manifestly disregard the law.  It had far

more than a colorable justification for its conclusion — it was correct.

## II.   THERE IS NO BASIS TO MODIFY THE AMENDED FINAL AWARD

Petitioners maintain, in the alternative, that the Panel "materially miscalculated" the

Amended Final Award by not applying pre-payments to interest before principal and, therefore,

the Amended Final Award should be modified pursuant to Section 11 of the FAA.  (*See* Pet.

Mem. at 18-19).  Section 11 permits modification of an arbitration award where there is "an

evident material miscalculation of figures."  9 U.S.C. § 11(a).  Courts in this Circuit consistently

hold that "the word 'miscalculation' implies inadvertence or an error caused by oversight."

*Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96 CIV.

6441(PKL), 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25, 2000).  Here, there was no oversight.

Petitioners argued that pre-payments should apply to interest before principal when responding

to the Rule 50 Motion, and the Panel specifically rejected this method when recalculating the Initial Award.  This was not a "careless or obvious mathematical mistake" but a "deliberate answer to a question submitted for [the Panel's] determination."  *Id.* at *6-7.  As such, it cannot form the basis for modification due to "material miscalculation" under § 11.  Petitioners ask this Court to substitute its judgment for that of the Panel.  It cannot do so.  *See*, *e.g.*, *Duferco*, 333 F.3d at 392-93.

## III.    THE AMENDED FINAL AWARD SHOULD BE CONFIRMED

Section 9 of the FAA provides that a party may apply to the court for an order confirming an arbitration award within one year after the award is made, "and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 9; *see also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) (confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.").  Even if only "a barely colorable justification for the outcome reached" by the arbitrators exists, the court is still required to confirm the award.  *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F. App'x 45, 47 (2d Cir. 2018).  The party opposing confirmation of an arbitral award bears the "very high" burden of proving that a defense applies, and the scope of review is narrow.  *Id.  Accord D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  Petitioners have presented no basis to vacate or modify the Amended Final Award.  The Amended Final Award should therefore be confirmed.

## CONCLUSION

"Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances . . . .  If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review

process." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013).

Petitioners' arguments ignore controlling Supreme Court and Second Circuit law.  Their

petition should be denied and Respondents' cross-petition granted.

Dated:   September 11, 2018
              New York, New York

Respectfully submitted,

JOSEPH HAGE AARONSON LLC

By: _____*/s/ Gregory P. Joseph*_____
      Gregory P. Joseph (gjoseph@jha.com)
      Douglas J. Pepe (dpepe@jha.com)
      Jeffrey H. Zaiger (jzaiger@jha.com)
      Gila S. Singer (gsinger@jha.com)
485 Lexington Ave, 30th Floor
New York, NY 10017
Phone: (212) 407-1200
Fax: (212) 407-1280
*Counsel for Respondents Black Diamond*
*Capital Management, LLC, BDC Finance*
*L.L.C., and Black Diamond CLO 2006-1*
*(Cayman), Ltd.*

RICHARDS KIBBE & ORBE LLP

By: _____*/s/ David W.T. Daniels*_____
      David W.T. Daniels (ddaniels@rkollp.com)
Portrait Building, 701 8th Street, N.W.
Washington, DC 20001
Phone: (202) 261-2960
Fax: (202) 261-2999
*Counsel for Respondent Black Diamond*
*Commercial Finance, L.L.C.*

801532