UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CRÉDIT AGRICOLE CORPORATE AND :
INVESTMENT BANK, ARCHIMEDES
FUNDING IV (CAYMAN), LTD., COPPER :
RIVER CLO LTD., ENDURANCE CLO I,
LTD., GREEN LANE CLO LTD., :
KENNECOTT FUNDING LTD.,
LANDMARK V CDO LTD., LANDMARK :
VI CDO LTD., LANDMARK VII CDO LTD.,
LANDMARK VIII CDO LTD., LATITUDE :
CLO I, LTD., THL CREDIT LOAN
OPPORTUNITY LTD. (F/K/A MCDONNELL:
LOAN OPPORTUNITY LTD.), OCEAN
TRAILS CLO I, PERMAL STONE LION :
FUND LTD., SANDS POINT FUNDING
LTD., STONE LION PORTFOLIO L.P., UBS :
AG, STAMFORD BRANCH, UBS LOAN
FINANCE LLC AND WG HORIZONS :
CLO I,                                           **MEMORANDUM AND ORDER**
                                    :
                Petitioners,                     18-CV-7620 (KNF)
                                    :
    -against-
                                    :
BLACK DIAMOND CAPITAL
MANAGEMENT, LLC, BDC FINANCE    :
L.L.C., AND BLACK DIAMOND CLO
2006-1 (CAYMAN), LTD., BLACK    :
DIAMOND COMMERCIAL FINANCE,
L.L.C.,                             :

                Respondents.    :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Before the Court is a: (1) Petition to Vacate or Modify Amended Arbitration Award and

to Confirm Original Award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9, 11,

13 and 207; and (2) Cross-Petition to Confirm Amended Final Arbitration Award, pursuant to 9

U.S.C. §§ 9 and 207.

## PETITIONERS' CONTENTIONS

The petitioners contend that, in April 2018,[1] the arbitration panel made a final award to them of "$39.2 million" against the respondents for "bad faith breaches of a credit agreement over a period of eight years leading up to the arbitration." After the respondents' motion to modify the final award, made pursuant to Rule 50 of the American Arbitration Association ["AAA"] Commercial Rules, the arbitration panel issued an amended final award in May 2018,[2] deeming the calculation of statutory pre-judgment interest a computational error and reducing the final award by "$2,177,482," consisting of: "(1) $530,104 resulting from the Panel's reversal of the compounding of interest and (2) $1,647,378 resulting from the Panel's decision to apply pre-payments to principal rather than accrued interest."

The petitioners assert that they received the following distribution payments from the respondents on the condition that each payment "be treated as a pre-payment of any judgment": (a) "$7,172,382," "made on March 18, 2016"; and (b) "$1,310,126," "made on June 30, 2016." The petitioners assert that, in its final award, the arbitration panel "subtracted the pre-payments from principal plus accrued interest"; however, in the amended final award, the arbitration panel "applied those payments to principal." The petitioners maintain that the arbitration panel in its final award "followed the New York rule" applying the respondents' "pre-payments against the accruing pre-judgment interest." The petitioners argue that: (1) the final award was a final decision on the merits; and (2) the amended final award did not correct a computational error but constituted a change in the legal standard applied to determine the amount of pre-judgment interest, which exceeded the arbitration panel's powers in a manifest disregard of the law. More specifically, the arbitration panel in its amended final award stated that it did not subtract the pre-

---
[1] The "Final Award" was signed by the arbitrators on April 19, 2018.
[2] The "Amended Final Award" was signed by the arbitrators on May 21, 2018.

2

payments from principal originally and proceeded to subtract the pre-payments from the principal; thus, the arbitration panel was "correcting" a legal error, not a computational error, since "the question of whether to apply pre-payments to interest or principal is clearly a legal question." The petitioners assert that in its final award, the arbitration panel "reached the legally correct answer" to the question of "how to apply the pre-payments," because "there was no agreement between Petitioners and Respondents that their 2016 payments would be applied to principal"; thus, the arbitration panel "properly applied such payments to interest in the Original Award."

The petitioners assert that the arbitration panel not only exceeded its powers but also created an error in the amended final award. They maintain that the portion of the amended final award "that purported to correct the compounding of interest in 2016, resulting in a reduction of $530,104 in pre-judgment interest" must be vacated because, although "New York courts generally do not compound pre-judgment interest," this "alleged error is legal and not simply a math error." The arbitration panel did not have jurisdiction to revisit the issue of compounding interest because "the rule against compounding interest is a product of case law and cannot serve as the basis for modifying an award based on a claimed 'computational' error."

Alternatively, the petitioners contend that the Court should correct the arbitration panel's "miscalculation of figures" in applying the 2016 pre-payments to the principal amount of the final award. Thus, if the Court finds that the arbitration panel had jurisdiction to revisit the issue of pre-judgment interest because the alleged error was computational, the Court "must correct the Panel's error pursuant to 9 U.S.C. § 11 by increasing the award by, at a minimum, the $1,647,378 constituting the portion [sic] Panel's reduction of the Original award attributable to applying the prepayments to the principal damages award."

3

In support of the petition, the petitioners submitted a declaration by their attorney with exhibits, including the pertinent decisions by the arbitration panel. The arbitration panel signed the final award, on April 19, 2018, stating, in pertinent part:

> For this reason, we have determined to take the average of the three above valuations that we find to be the most credible. Where a range of value was given, we took the midpoint. Thus, we added $62.5 million (the midpoint of $50-75), $37 million (the midpoint of $30-45), and $150,871,927 and took the average of the three which came to $83,457,309. Claimants' 31.1112% *pro rata* share of $83,457,309 is $25,964,570.3176.
> From this figure we then subtracted the cash payments received and calculate PJI [pre-judgment interest] accordingly.
> Here is our calculation:
> (1) From July 26, 2011 – February 28, 2016, interest of 9% is calculated on the full amount of $25,964,570.3176, for a total of $10,729,591.9244 (or $194,734.277382 per month for 55 months and 3 days). This brings the total, as of March 2016, to $36,694,162.242. From this we subtracted the first payment of $7,200,000 made in March 2016, for a total of $29,494,162.242.
> (2) From March 2016 – June 2016, we calculated three months of interest on the balance of $29,494,162.24 which comes to $663,618.65 for a total of $30,157,780.89. From this we subtracted the June 2016 payment of $1.3 million for a total of $28,857,780.89.
> (3) We then calculated the remaining PJI as follows: For the period from June 2016 through and including April 20, 2018, PJI totals $4,903,846.19 (or $216,433.36 per month for 22 months and 20 days). This brings the total award to $33,761,627.08.

On May 21, 2018, the arbitration panel issued an Order Modifying Award, stating, in pertinent part:

> Rule 50 provides that a party "may request the arbitrator through the AAA, to correct any clerical, typographical, or computation errors in the award." However, an arbitrator may not "redetermine the merits of any claim already decided." Under Rule 8, the Panel has the authority to "interpret and apply" the AAA rules. The question here is whether the request to revise the Panel's calculation of interest on the Award seeks to correct a computational error or determination of the merits of a claim. The Panel concludes that it made a computational error when calculating interest and that correcting that error does not involve redetermining the merits of any claim already decided. . . . . In its Award, at page 147, the Panel explicitly stated that it relied on the agreement by the experts for each side – Finkel and Gompers – as the source for applying 9% PJI. In their damages calculations, both experts explicitly adopted a simple 9% interest rate to the outstanding amounts

4

*after* subtracting the payments made by Black Diamond. There was never any question as to the calculation of PJI – it was always meant to be simple rather than compounding interest. We inadvertently made a computational error by compounding interest on the remaining balance after partial payment. The Award, itself, confirms that this was a computational error. At page 174 of the Award we awarded damages of $25,964,570.3176. We then stated: "From this figure" we intend to "then subtract[] the cash payments received and calculate PJI accordingly." But rather than simply subtracting the payments from the principal figure and then calculating PJI, we subtracted the payments from the sum of both principal and PJI that had already been calculated and then calculated interest on both principal and PJI. That was a computational error.

Thereafter, the arbitration panel signed the amended final award, on May 21, 2018, stating, in pertinent part:

> For this reason, we have determined to take the average of the three above valuations that we find to be the most credible. Where a range of value was given, we took the midpoint. Thus, we added $62.5 million (the midpoint of $50-75), $37 million (the midpoint of $30-45), and $150,871,927 and took the average of the three which came to $83,457,309. Claimants' 31.1112% *pro rata* share of $83,457,309 is $25,964,570.32.
> From this figure we then subtracted the cash payments received and calculate PJI accordingly.
> Here is our calculation:
> (1) From July 26, 2011 – February 28, 2016, interest of 9% is calculated on the full amount of $25,964,570.32, for a total of $10,710,385.26.
> (2) From the principal amount of $25,964,570.32 we subtracted the first payment of $7,200,000 made in March 2016, for a total of $18,764,570.32. From March 2016 – June 2016, we calculated three months of interest on $18,764,570.32 which comes to $422,202.83.
> (3) From the remaining principal amount of $18,764,570.32, we subtracted the June, 2016 payment of $1,300,000 to obtain a new balance of $17,464,570.32.
> (4) We then calculated the remaining PJI as follows: For the period from June 2016 through and including April 21, 2018, 22 months and 20 days, PJI totals $2,967,780.75.
> (5) This brings the total interest to $14,119,575.51, which when added to the principal amount of $17,464,570.32, comes to a total of $31,584,145.83.

## RESPONDENTS' CONTENTIONS

The respondents contend that the arbitration panel did not exceed its authority in interpreting the respondents' "Rule 50 motion and issuing the Amended Final Award" because "the parties expressly agreed that the Commercial Rules governed and were incorporated in their Arbitration Agreement," and those rules "grant the Panel the 'power to rule on [its] own jurisdiction' and the power to 'interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties.'" According to the respondents, the arbitration panel "relied on its Rule 8 authority in concluding that it inadvertently 'made a computational error when calculating interest.'" The arbitration panel's interpretation of Rule 50 was correct because "[i]n New York state court, PJI computations are ministerial and usually performed by the clerk using a formula published on the court's website." Moreover, no manifest disregard of the law occurred because the arbitration panel rejected the petitioners' arguments and authorities "regarding whether prepayments should be applied first to accrued interest or the principal damages amount." The respondents assert that no basis exists to modify the amended final award because "there was no oversight" as "Petitioners argued that pre-payments should apply to interest before principal when responding to the Rule 50 Motion, and the Panel specifically rejected this method when recalculating the Initial Award." The respondents request that the amended final award be confirmed.

## PETITIONERS' REPLY

The petitioners assert that the arbitration panel manifestly disregarded the limits of its jurisdiction in modifying the award because it "acknowledged that an erroneous application of the pre-payments 'would constitute a mistake of law, as demonstrated by the very case law [Petitioners] have invoked, and we have no jurisdiction to correct a mistake of law,'" yet, it

6

"proceeded to change the application of the pre-payments from interest to principal in its Amended Award." Since the arbitration panel "acknowledged that it lacked the jurisdiction to modify the application of the pre-payments based on this principle, but did so anyway, there can also be no dispute that the Panel 'knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'"

The petitioners contend that the respondents "misleadingly state that '[t]he parties expressly agreed that the [AAA] Commercial Rules governed and were incorporated in their Arbitration Agreement,'" whereas the parties "did not incorporate the rules in full and expressly agreed that, in the event a conflict between the AAA Commercial Rules and the terms of the Arbitration Agreement, the terms of the Agreement would control." As two provisions of the parties' agreement conflict with the AAA Commercial Rules, the FAA supersedes any conflicting rule that would deprive the court of its power to vacate an award on the grounds that the arbitrators exceeded their power. Alternatively, the amended final award should be modified by correcting the error "in applying the pre-payments to principal as opposed to interest." "It is undisputed that applying the pre-payments to interest instead of principal would increase the Amended Award by $1,647.378."

### RESPONDENTS' REPLY

The respondents assert that the arbitration panel had authority "to correct the computational error in the Initial Award that resulted in erroneously awarding compound interest to Petitioners," and "[t]hat correction is not subject to second-guessing." Moreover, the arbitration panel did not change the application of payments, because it stated: "At page 174 of the [Initial] Award we awarded damages of $25,964,570.3176. We then stated: 'From this figure' we intend to 'then subtract [] the cash payments received and calculate PJI accordingly.'"

7

The respondents assert that "this figure" was a reference to the principal amount and the arbitration panel's "holding with respect to this issue never changed." The respondents contend that during the arbitration hearing, the petitioners never asked the arbitration panel to apply the payments to interest and "sought to change how the payments were applied for the first time after the hearing had concluded and after Respondents had requested the Panel to correct its computational error." Moreover, the arbitration panel rejected the petitioners' legal argument and the petitioners now ask that the Court "reverse a substantive determination that the Panel made three times: in the Initial Award, in its May 21 Order, and in the Final Award." According to the respondents, the arbitration panel: (i) "corrected its computational interest error to render the Amended Final Award *consistent* with the Panel's holding in the Initial Award, the position of both parties in the Arbitration, and its power under the Commercial Rules"; and (ii) "declined Petitioners' invitation to adopt a new legal approach to the application of payments that was *inconsistent* with the Panel's holding in the Initial Award, the position of both parties in the Arbitration, and Petitioners' own interpretation of the Commercial Rules." The respondents assert that "[t]he Panel's application of payments was an issue of substance that the Panel resolved" and it "concluded that it was without power to change its decision to apply payments to principal in the Initial Award, and that changing it was unwarranted."

## LEGAL STANDARD

Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), also known as the New York Convention,

> any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for

8

refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

The Convention applies to the arbitral award in this case because the parties' agreement to arbitrate is not entirely between citizens of the United States and the arbitration proceeding occurred in the United States. See Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007). "[T]he court may apply FAA standards to a motion to vacate a nondomestic award rendered in the United States." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 21 (2d Cir. 1997). "[T]he FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." Scandinavian Reinsurance v. Saint Paul, 668 F.3d 60, 71 (2d Cir. 2012) (citation omitted).

The FAA provides:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title.

9 U.S.C. § 9.

"[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The court may also "make an order modifying or correcting the award upon the application of any party to the arbitration . . . [w]here there was an evident material miscalculation of figures." 9 U.S.C. § 11(a).

Additionally, in this circuit, "the court may set aside an arbitration award if it was rendered in 'manifest disregard of the law.'" Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d

9

444, 451 (2d Cir. 2011) (citation omitted). To satisfy the manifest disregard of the law standard, the movant must show that: (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable"; and (2) "the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" Id. at 452 (citation omitted).

> "[M]ere error in the law or failure on the part of the arbitrator [] to understand or apply the law" is not sufficient to establish manifest disregard of the law. For an award to be in "manifest disregard of the law," [t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.
>
> Yusuf Ahmed Alghanim & Sons, 126 F.3d at 23-24 (citations omitted).

"[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004) (citation omitted). "A federal court may not conduct a reassessment of the evidentiary record," and "'[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.' Only this approach to the evidentiary record is consistent with the 'great deference' which must be paid to arbitral panels by federal courts." Id. (citations omitted). "[T]he manifest disregard of law doctrine [is used] to vacate arbitral awards only in the most egregious instances of misapplication of legal principles." Id. at 190.

> Normally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "'if a ground for the arbitrator's decision can be inferred from the facts of the case[.]'" Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the

award. A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations omitted).

## APPLICATION OF LEGAL STANDARD

The arbitration panel concluded, in its May 21, 2018 Order Modifying Award, that "it made a computational error when calculating interest" by "compounding interest on the remaining balance after partial payment." "[R]ather than simply subtracting the payments from the principal figure and then calculating PJI, we subtracted the payments from the sum of both principal and PJI that had already been calculated and then calculated interest on both principal and PJI. That was a computational error." Below is a comparison of the "calculation" the arbitration panel performed in the Final Award and the Amended Final Award.

***Calculation of 9% Interest on the Principal Amount "From July 26, 2011–February 28, 2016"***

| Final Award | From July 26, 2011–February 28, 2016 Interest of 9% on $25,964,570.3176 | $10,729,591.9244 (or $194,734.277382 per month for 55 months and 3 days) |
|---|---|---|
| Amended Final Award | From July 26, 2011–February 28, 2016 Interest of 9% on $25,964,570.32 | $10,710,385.26 |

If the arbitration panel was only correcting "a computational error," its "calculation" should have been the same in the final award and the amended final award; however, it is not. In its final award, the arbitration panel calculated correctly that 9% annual interest on the principal amount of $25,964,570.3176 is $10,729,591.9244, based on "$194,734.277382 per month for 55 months and 3 days." The arbitration panel did not explain in the final award why it decided: (a) to calculate 9% annual interest based on the time period "[f]rom July 26, 2011 – February 28, 2016," which it stated contains "55 months and 3 days," excluding February 29, 2016, which would have added one day to the calculation of interest; and (b) not to calculate 9% annual

11

interest for the period "[f]rom July 26, 2011" until the date when the first distribution payment of $7,172,382 was made, March 18, 2016, rather than "February 28, 2016." Notwithstanding this failure, the amount of interest calculated for the same time period, "[f]rom July 26, 2011 – February 28, 2016," on the same principal amount, is not the same in the final award and the amended final award—the final award indicates $10,729,591.9244, whereas the amended final award indicates $10,710.385.26. If, as the arbitration panel contends, "it made a computational error when calculating interest" by "compounding interest on the remaining balance after partial payment," the calculation of 9% annual interest for the same time period on the principal amount, $25,964,570.3176 in the final award that was rounded up by the arbitration panel to $25,964,570.32 in the amended final award, did not involve "compounding interest on the remaining balance after partial payment"; thus, 9% annual interest on the principal amount of $25,964,570.3176, rounded up to $25,964,570.32, should have been the same in the final award and the amended final award. It is not.

It appears that the arbitration panel, in its amended final award, reached the amount of "$10,710,385.26" by: (i) calculating 9% annual interest on the principal amount of $25,964,570.32, which is $2,336,811.32; (ii) dividing $2,336,811.32 by 12 months, resulting in a monthly interest of $194,734.27; and (iii) multiplying monthly interest of $194,734.27 by 55 months, resulting in $10,710,384.85, which is an amount proximate to $10,710,385.26, the amount stated in the amended final award by the arbitration panel. No explanation was provided by the arbitration panel for the discrepancy between the amount of 9% annual interest calculated on the same principal amount for the same period of time in the final award and that calculated in the amended final award. Since that calculation did not involve correcting any evident material miscalculation of figures, and the arbitration panel reduced, inexplicably, the amount of interest

12

based on the principal amount for the same period of time and before applying any distribution payment, the Court concludes that the arbitration panel's calculation in the amended final award, on its face, did not involve correcting "a computational error." The Court finds that the arbitration panel's calculation in the amended final award exceeded the arbitration panel's powers, pursuant to 9 U.S.C. §10(a)(4).

*Application of Distribution Payments*

|  | Amount from which $7,200,000 March 2016 distribution payment was subtracted | Amount from which $1,300,000 June 2016 distribution payment was subtracted |
|---|---|---|
| Final Award | $36,694,162.242 (sum of $25,964,570.3176, the principal amount, plus $10,729,591.9244, which is 9% annual interest on the principal amount from July 26, 2011– February 28, 2016) | $30,157,780.89 (sum of $29,494,162.24, the remaining balance obtained after subtracting $7,200,000 from $36,694,162.242, plus $663,618.65, which is 9% interest on the remaining balance from March 2016-June 2016) |
| Amended Final Award | $25,964,570.32 (the initial principal amount) | $18,764,570.32 (the principal amount remaining after subtracting the March 2016 distribution payment of $7,200,000 from the initial principal amount) |

It is apparent from the above comparison of the arbitration panel's subtraction of the March 2016 distribution payment of $7,200,000 that, in the final award, the subtraction was made from $36,694,162.242, which is the amount representing the sum of the initial principal of $25,964,570.3176 and $10,729,591.9244, the 9% interest on the initial principal for the period July 26, 2011– February 28, 2016, whereas in the amended final award, the subtraction was made from $25,964,570.32, the initial principal amount. It is also apparent from the above comparison of the arbitration panel's subtraction of the June 2016 distribution payment of $1,300,000 that, in the final award, the subtraction was made from the amount representing the sum of the remaining balance of $30,157,780.892 (obtained by adding $663,618.65, which is 9% interest for the period March 2016-June 2016 to $29,494,162.242, the remaining balance after

13

the first subtraction), whereas in the amended final award, the subtraction was made from $18,764,570.32, the principal amount remaining after subtracting the March 2016 distribution payment of $7,200,000 from the initial principal amount of $25,964,570.32. Whether distribution payments should be deducted from: (i) the sum of the principal amount and interest on the principal amount; (ii) the principal amount only; (iii) the interest amount only; or (iv) some other amount, is not a computational issue; rather, it is a substantive issue of law that must be determined before proceeding to calculate. The arbitration panel in its final award determined to subtract the March 2016 and the June 2016 distribution payments from the sum of the principal amount and the interest amount, for the periods of "July 26, 2011– February 28, 2016," and "March 2016 – June 2016." In its amended final award, the arbitration panel changed course and determined to subtract the March 2016 and the June 2016 distribution payments from the principal amounts only. Changing course in the amended final award respecting the application of the March 2016 and the June 2016 distribution payments did not constitute correcting "a computational error."

The arbitration panel explained in its Order Modifying Award: "In its Award, at page 147, the Panel explicitly stated that it relied on the agreement by the experts for each side – Finkel and Gompers – as the source for applying 9% PJI." Page 147 of the final award contains the following relevant text:

> Before turning to an examination of each expert's opinion, we note that both experts began by fixing the value of *all* of the assets purchased at the sale. Both then calculated the Claimant's agreed upon 31.1112% of that total, applied pre-judgment interest (PJI) at the agreed rate of 9% per annum, and then subtracted the amounts already received by the Claimants through various distributions by Respondents.

It is apparent from the relevant text on page 147 of the final award referenced by the arbitration panel that the arbitration panel noted how the parties' respective experts performed their

14

calculations, "[b]efore turning to an examination of each expert's opinion." Nowhere on page 147 of the final award did the arbitration panel "explicitly state[] it relied on the agreement by the experts for each side . . . as the source for applying 9% PJI." Moreover, the arbitration panel's noting of the method used by both experts to perform their calculations on page 147, namely, (i) calculate the principal amount, (ii) apply the pre-judgment interest at the agreed rate of 9% per annum, (iii) "and then subtract[] the amounts already received by the Claimants through various distributions by Respondents," contradicts what the arbitration panel stated in its Order Modifying Award, namely: "In their damages calculations, both experts explicitly adopted a simple 9% interest rate to the outstanding amounts *after* subtracting the payments made by Black Diamond." The arbitration panel's notation on page 147 of the final award is consistent with the arbitration panel's calculation performed in the final award.

The arbitration panel explained in its Order Modifying Award that, from the principal award of "$25,964,570.3176," it "intend[ed] to "then subtract[] the cash payments received and calculate PJI accordingly." However, the arbitration panel exceeded its powers when it modified the calculation made in the final award that did not contain any evident material miscalculation of figures to conform it to the calculation it "intend[ed]" to perform that contained substantive changes in the calculation method. Such a modification does not constitute "a computational error"; rather, it involves a substantive issue of law concerning the method of calculation, including the application of distribution payments. The Court finds that the arbitration panel's calculation in the amended final award exceeded the arbitration panel's powers, pursuant to 9 U.S.C. § 10(a)(4).

15

### *Determination of the Merits of the Claimants' Argument*

In the Order Modifying Award, the arbitration panel stated that "Claimants also argue that . . . any payments made should be subtracted first from PJI, rather than from the principal," noting that "this legal argument was never raised before by Claimants and it is too late to do so now." The arbitration panel stated that, "if this position were meritorious – which we do not believe it is – it would constitute a mistake of law, as demonstrated by the very case law Claimants have invoked, and we have no jurisdiction to correct a mistake of law." However, the arbitration panel proceeded to do exactly what it acknowledged the law prohibited it from doing: determining the merits of the claimants' argument:

> [A]s a substantive matter, we disagree that this would be an appropriate way to calculate PJI. *See, e.g., Barry v. Atkinson*, 1999 WL 997151, at *2 (S.D.N.Y. Nov. 3, 1999) ("Under New York law, a plaintiff is entitled to prejudgment interest at a simple rate of nine (9) percent per annum from the time of breach until the entry of judgment. At the time of breach, plaintiffs' actual damages totaled $487,500. Absent a set-off, plaintiffs would be entitled to interest on this amount, commencing on January 6, 1994, and continuing until the entry of judgment on August 17, 1999. Defendant did, however, make a partial payment to plaintiffs on August 24, 1994, in the amount of $232,500. Accordingly, the basis of defendant's interest obligation was $487,500 from January 6, 1994, and $255,000 from August 25, 1994, to August 17, 1992.") (citations omitted). In short, we reject this argument.

Moreover, the arbitration panel not only exceeded its powers when it changed course in the amended final award by subtracting distribution payments from the principal amount only, and not from the sum of the principal amount and interest amount, as it had done in the final award, it also exhibited manifest disregard of the law prohibiting the arbitration panel from acting as it did. The arbitration panel acknowledged, in the Order Modifying Award, that the issue whether "any payments made should be subtracted first from PJI, rather than from the principal" was a "legal argument," "as demonstrated by the very case law Claimants invoked,"

16

and concluded that it had "no jurisdiction to correct a mistake of law." Rather than leaving the matter at that point, the arbitration panel proceeded to do what it said it had no jurisdiction to do – determine that the distribution payments should be subtracted from the principal and reject the claimants' argument. The arbitration panel acknowledged the well-defined, explicit and clearly applicable law prohibiting the arbitration panel from exercising jurisdiction over an issue of law already determined in the final award and raised for the first time after the final award issued, but decided to ignore it and proceeded to: (a) discuss the merits of the substantive argument raised by the claimants; (b) reject the claimants' legal argument; and (c) reverse its determination made in the final award by subtracting the distribution payments from the principal. The Court finds that the arbitration panel acted in manifest disregard of the law.

*Calculation of Interest*

|  | 9% per year interest from July 26, 2011– February 28, 2016 | 9% per year interest from March 2016–June 2016 | 9% per year interest from June 2016 through and Including April 20, 2018 |
| --- | --- | --- | --- |
| Final Award | $10,729,591.9244 | $663,618.65 | $4,903,846.19 |
| Amended Final Award | $10,710,385.26 | $422,202.83 | $2,967,780.75 |

Notwithstanding that the arbitration panel in both the final award and the amended final award calculated interest twice for the month of June 2016, without explanation, the differences in the amount of interest for each of the three time periods between the final award and the amended final award are not due to any evident material miscalculation of figures; rather, they are based solely on the fact that in its final award the arbitration panel applied 9% per year compounded interest, after applying 9% per year simple interest on the initial principal amount of $25,964,570.3176, whereas in the amended final award, it applied 9% per year simple interest on the principal amount only, apart from double-counting the interest for June 2016. Whether interest should be simple or compound is an issue of law that the arbitration panel determined

17

when it calculated interest in the final award. The arbitration panel not only exceeded its powers when it changed course in the amended final award, it also exhibited manifest disregard of the law prohibiting the arbitrators from acting as they did because the arbitration panel acknowledged the well-defined, explicit and clearly applicable law prohibiting it from exercising jurisdiction over an issue of law already determined in the final award and raised for the first time after the final award issued, but decided to ignore it and proceeded to: (a) discuss the merits of the substantive argument raised by the claimants; (b) reject the claimants' legal argument; and (c) reverse its determination made in the final award by changing the type of interest it applied in its calculation. The Court finds that the arbitration panel acted in manifest disregard of the law.

## CONCLUSION

For the foregoing reasons: (1) the petition to vacate the amended final award and to confirm the final award, Docket Entry No. 2, is granted; and (2) the cross-petition to confirm the amended final award, Docket Entry No. 17, is denied.

Dated: New York, New York
March 22, 2019

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE